UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUNBELT RENTALS, INC.,<br><br>                     Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                     Defendant. | Case No. 1:17-cv-00325-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's motion to dismiss. Defendant contends that, although styled as a tort claim, Plaintiff's claim is based upon and relates to a procurement contract with the United States, the exclusive remedy for which is the Contract Disputes Act. According to the United States, the Act provides a comprehensive statutory scheme and does not confer jurisdiction upon the Court. The parties filed responsive briefing, and it is now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding

delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion will be decided on the record before this Court and the hearing set for October 31, 2018, will be vacated. Dist. Idaho L. Rule 7.1(d). For the reasons that follow, the Court finds it lacks jurisdiction and will grant Defendant's motion to dismiss.

## BACKGROUND[1]

On or about September 12, 2016, the Bureau of Reclamation rented a manlift from Sunbelt. Compl. ¶¶ 11-12, ECF No. 1. Plaintiff alleges that "[o]n or about September 16, 2016 at approximately 3:00 P.M., Bureau of Reclamation employees were transporting the Equipment," when "the trailer, which was carrying the Equipment tipped over." *Id*. ¶¶ 13, 16. Plaintiff later submitted a tort claim in the amount of $133,089.00 to the Bureau of Reclamation "to recover losses, per the terms of the Rental Agreement between" Plaintiff and the Bureau of Reclamation. Compl. ¶ 9; Decl. of Matthew C. Watts, Ex. A.[2] Both parties acknowledge that an express agreement for the rental of the Equipment was reached. Compl. ¶ 11 (the Bureau of Reclamation "rented" the Equipment); Ans. ¶ 11 (admitting the allegations in ¶ 11 of the Complaint.) The Office of the Solicitor for the United States Department of the Interior denied Sunbelt's claim on behalf of the Bureau

---

[1] The facts are taken from the Complaint, and for the purposes of the motion to dismiss, are taken as true.

[2] Ex. A to the Declaration of Matthew Watts is the tort claim Plaintiff submitted to the Bureau of Reclamation. The notice references Sunbelt Rental Contract No. 63253478-001.

(Continued)

**MEMORANDUM DECISION AND ORDER - 2**

of Reclamation on February 28, 2017. Compl. ¶ 9. Plaintiff filed the Complaint alleging a tort under the Federal Tort Claims Act. (Compl., Dkt. 1.)[3]

The United States moves to dismiss Plaintiff's tort claim for lack of jurisdiction, arguing that because Plaintiff's claim is based upon and relates to a procurement contract with the United States, the exclusive remedy is under the Contract Disputes Act. The United States' motion is predicated on a challenge to jurisdiction as a factual matter. Plaintiff disagrees, arguing that it has asserted a negligence claim against the United States, and its claim is not a contract claim disguised as a tort claim. Plaintiff contends this action is properly brought as a tort claim, and therefore the Court has jurisdiction under the Federal Tort Claims Act.

## DISPOSITION

**1.     Standard of Review**

The United States contends the Court lacks subject matter jurisdiction as a factual matter under Fed. Rule Civ. P. 12(b)(1) and 12(b)(3). A motion to dismiss for lack of

---

[3] After Plaintiff filed its Complaint, the Government attempted to reach a settlement of the claim. (England Decl. ¶ 2.) The parties agreed upon an amount, but did not agree on other terms. (*Id*.) The Government then determined that, because Plaintiff's claim related to a procurement contract, it was justiciable only under the Contract Disputes Act and could not be resolved under the Federal Tort Claims Act. (*Id*. ¶ 3.) Counsel for the Government notified Plaintiff's counsel that the Government could not enter a tort settlement under the Federal Tort Claims Act and urged Plaintiff to submit a claim to the Bureau of Reclamation under the Contract Disputes Act. (*Id*. ¶ 4.) The next day, Plaintiff's counsel emailed a signed copy of the originally proposed, but by then rescinded and withdrawn, settlement stipulation to counsel for the Government. (*Id*. ¶ 5.) Although counsel for the Government has repeatedly urged Plaintiff to present a claim to the appropriate contracting officer so that Plaintiff's claim could be resolved under the Contract Disputes Act, Plaintiff has not done so. (*See* England Decl. ¶¶ 4, 6-8.)

subject matter jurisdiction may either attack the allegations in the complaint or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When a Rule 12(b)(1) motion attacks the substance of a complaint's jurisdictional allegations despite their formal sufficiency, the trial court may rely on affidavits and other evidence submitted in connection with the motion. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 39 (9th Cir. 1978)).

Because the issue in a factual attack under Rule 12(b)(1) is the "trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891.

2. **Applicable Law**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Statutes waiving sovereign immunity must be strictly adhered to, and any waiver must be strictly construed in favor of the United States. *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000).

**MEMORANDUM DECISION AND ORDER - 4**

Immunity of the United States to suits in tort was waived upon the enactment of the Federal Tort Claims Act in 1946, which conferred on the district courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages…for injury or loss of property…caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant…." 28 U.S.C. § 1346(b).

For those cases not sounding in tort, the Tucker Act conferred upon the United States Court of Federal Claims the power to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages." 28 U.S.C. § 1491(a). 28 U.S.C. § 1941(a)(2) further grants the Court of Federal Claims "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under" the Contract Disputes Act. *Summit Multi-Family Hous. Corp. v. United States*, 124 Fed. Cl. 562, 569 (2015).

The Contract Disputes Act (CDA), enacted in 1978,[4] covers any claim based upon "any express or implied contract ... made by an executive agency for—(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real

---

[4] Contract Disputes Act of 1978, Pub. L. No. 95–563, 1978 U.S.C.C.A.N. (92 Stat.) 2383.

**MEMORANDUM DECISION AND ORDER - 5**

property; or (4) the disposal of personal property." 41 U.S.C. § 7102(a). Under the CDA, "procurement" means "the acquisition by purchase, lease or barter, of property or services for the direct benefit or use of the Federal Government." *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989) (quotation and emphasis omitted).

The CDA sets forth its own jurisdictional requirements. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327–28 (Fed. Cir. 2010). Under the CDA, claims by a government contractor against the United States must first be the subject of a decision by the contracting officer, defined as "any person who ... has the authority to enter into and administer contracts and make determinations and findings with respect thereto." 41 U.S.C. §§ 601(3), 605(a). The decision by the contracting officer may be appealed to an agency board of contract appeals or to the United States Court of Federal Claims. 41 U.S.C. §§ 607(d), 609(c). Further appeals from these bodies must be filed with the United States Court of Appeals for the Federal Circuit. 41 U.S.C. § 607(g)(1); *see United States v. Rockwell Int'l. Cor*p., 795 F.Supp. 1131, 1134 (N.D. Ga. 1992).

The review procedures under the CDA are exclusive of jurisdiction in any other forum. 41 U.S.C. § 605(b); *see also Mgt. Science Am., Inc. v. Pierce*, 598 F.Supp. 223, 225 (N.D. Ga. 1984), *aff'd*, 778 F.2d 792 (11th Cir. 1985). Thus, federal district courts lack jurisdiction over a contractor's claim against the government which is subject to the CDA. *See* S.Rep. No. 1118, 95th Cong., 2d Sess. 10, reprinted in 978 U.S.C.C.A.N. 5235, 5244 (noting that "U.S. district court jurisdiction is eliminated from Government contract claims").

**MEMORANDUM DECISION AND ORDER - 6**

To determine if the CDA applies, the Court must look to whether the dispute at issue is one of contract. *See Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 76 (D.C. Cir. 1985). The court in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), explained that courts should attempt "to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds." 672 F.2d at 969–70. The *Megapulse* court further noted that, when examining "competing" jurisdictional bases, the issue is "to determine if the claim so clearly presents a disguised contract action that jurisdiction over the matter is properly limited to the Court of Claims." *Id.* at 968.

It is well-established that disguised contract actions may not escape the CDA. *See, e.g., Ingersoll–Rand*, 780 F.2d at 77; *Am. Science & Eng., Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978). Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation. *See Sealtite Corp. v. General Services Admin.*, 614 F.Supp. 352, 354 (D. Colo. 1985) (rejecting attempt to "circumvent the [CDA] by characterizing dispute as an action in replevin"). Effective enforcement of the jurisdictional limits of the CDA mandates that courts recognize contract actions that are dressed in tort clothing. *United States v. J & E Salvage Co.*, 55 F.3d 985, 987–88 (4th Cir. 1995). *See also Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option.").

The definition of "claim" for purposes of the CDA derives from the Federal Acquisition Regulation,[5] which implements the CDA. *See M. Maropakis Carpentry*, 609 F.3d at 1327–28. FAR 2.101 provides, in pertinent part, that "claim" means "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." *Id*.

The Federal Circuit, interpreting FAR 2.101, has held that a valid CDA claim consists of three components: "(1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013) (citing *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575–76 (Fed. Cir. 1995)). The Federal Circuit has further explained that, "[w]hile a valid claim under the CDA must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim,' the claim need not take any particular form or use any particular wording." *Id*. (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)). "All that is required," the Federal Circuit has observed, "is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id*. (quoting *Contract Cleaning Maint., Inc*., 811 F.2d at 592).

---

[5] The Federal Acquisition Regulation, or FAR, is available at www.acquisition.gov. FAR 7.4 governs decision making regarding whether to lease or purchase equipment.

For claims seeking more than $100,000, FAR 2.101 incorporates within the definition of "claim" the CDA's certification requirement. 41 U.S.C. § 7103(b)(1). That requirement provides:

> For claims of more than $100,000 made by a contractor, the contractor shall certify that—
> (A) the claim is made in good faith;
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

*Id*. *See also Summit Multi-Family Hous. Corp. v. United States*, 124 Fed. Cl. 562, 569–70 (2015).

3.  Analysis

**A. The United States Did Not Waive the Issue of the Court's Jurisdiction**

Plaintiff first argues Defendant admitted the Court had jurisdiction in this matter in its Answer, and therefore waived the right to contest the Court's jurisdiction. However, "federal courts are courts of limited jurisdiction ... empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (quoting 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3522, at 60 (2d ed.1984) (footnote omitted)). While defects in procedural rules may be waived or forfeited by parties who fail to object properly, defects in the Court's subject-matter jurisdiction "go to the inherent power of the court and cannot be waived or

forfeited." *Jacobo Castillo*, 496 F.3d at 952. Accordingly, the Government's admission in its answer to Plaintiff's assertion that the Court has jurisdiction does not prevent the Court from examining the issue. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[t]he court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.").

### B. The Court Lacks Jurisdiction

The analysis in *Todd Construction, L.P., v. United States*, 656 F.3d 1306 (Fed. Cir. 2011) is instructive. There, the court explained that a "claim" is defined broadly in the FAR, and so long as the claim "relat[es] to the contract," it is a claim under the CDA, thereby conferring jurisdiction in the Claims Court under the Tucker Act. 656 F.3d at 1311. The court further recognized that Congress chose expansive language in defining the jurisdiction of the Claims Court over CDA disputes, and therefore courts must read the definition of claim broadly. *Id.* Further, the FAR "has…ensured that review of contract claims will be relatively easy to obtain, by defining the term 'claim' broadly, to include a demand or assertion seeking…relief arising under or relating to the contract." *Id.* (quoting *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999)).

The court in *Todd Construction* noted also that the language of the FAR 2.101 is extremely broad. *Id.* at 1312. "The term 'related' is typically defined as 'associated; connected.'" *Id.* (quoting Random House Webster's UNABRIDGED DICTIONARY 1626 (2d ed. 1998)). And, the United States Supreme Court has interpreted the term "related to" broadly as well. *Id.* (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995)

(holding that Congress' jurisdictional grant to bankruptcy courts to hear proceedings "related to" a bankruptcy case "suggests a grant of some breadth" and includes inter alia, suits between third parties which have an effect on the bankruptcy estate).

To be a claim "relating to the contract" under the CDA, the claim "must have some relationship to the terms or performance of a government contract." *Id.* at 1312 (quoting *Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998)). The FAR expressly provides that government agencies may enter lease agreements, and that such conduct falls within the procurement function of government agencies. *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989) (defining "procurement" as acquisition by purchase, lease or barter for the direct benefit or use of the federal government). Plaintiff does not dispute that it entered into a lease agreement with the Government providing for the Government's use of the equipment. The Government's satisfactory performance under that lease agreement, which would include the obligation to return the equipment in the same condition as it was upon delivery, is related to the contract itself. So long as the claim relates to the Government's performance under the contract, CDA jurisdiction exists. *Id.* at 1314.

Plaintiff cannot recast its claim as a tort under the circumstances here. When faced with a similar question, the United States Court of Appeals for the Fourth Circuit found that the plaintiff's claim of conversion had to be brought pursuant to the CDA. *United Federal Leasing, Inc. v. United States*, 33 Fed. Appx. 672 (4th Cir. 2002). There, the government entered into a contract to lease computer equipment to the Navy. The contractor assigned its right and interest in the equipment to a subcontractor. When the

equipment was not returned upon termination of the lease agreement, the subcontractor sued under the Federal Tort Claims Act for conversion. The court held that the claim was contractual, because it was necessary to look at the terms of the contract to find the source of the rights that the plaintiff claimed in the computer equipment. *United Federal Leasing, Inc.*, 33 Fed. Appx. at 674-75. The court explained that the plaintiff could not overcome the court's lack of jurisdiction by framing the claim against the United States as a tort, and it affirmed the district court's dismissal for lack of subject matter jurisdiction. *Id.* at 674. *See also Evers v. Astrue*, 536 F.3d 651, 658 (7th Cir. 2008) (explaining that the characterization or labeling of claims by the pleader is not controlling).

The United States' obligation here with respect to the care and safe return of the equipment necessarily arises out of the terms of the lease agreement with Plaintiff. *See, e.g., U.S. v. Bostwick*, 94 U.S. 53 (1876) ("in every lease there is, unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to so use the property as not unnecessarily to injury it, or…to treat the premises demised in such manner that no injury be done...."). Accordingly, Plaintiff may not invoke the jurisdiction of the Court by suing under the Federal Tort Claims Act (FTCA) when the CDA covers the claims here.

The cases cited by Plaintiff to the contrary do not apply, as all were decided prior to enactment of the CDA or did not discuss the CDA. For instance, *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963), involved a claim under the FTCA for damages for breach of fiduciary duty arising out of a construction contract. There, the Ninth Circuit

affirmed the district court's determination that the contractor could not maintain a tort claim because the action was for breach of a contractual undertaking, and therefore it had to be brought under the Tucker Act. *Woodbury*, 313 F.3d at 295. *Woodbury* was decided prior to the passage of the CDA and required the court to engage in an analysis regarding the source of the plaintiff's rights. The court determined that the suit arose out of the contract itself, because the defendant could have no liability unless the plaintiff could prove the existence of a contract and breach of its terms. *Id.* at 297. Accordingly, the court upheld the district court's determination that it lacked jurisdiction. *Id.*

In *Aleutco Corp. v. United States*, 244 F.2d 674 (3rd Cir. 1957), the issue was whether plaintiff's action against the government for conversion could be maintained as a tort or was a contract action required to be brought in the Court of Claims under the Tucker Act, prior to the enactment of the CDA. There, the court explained that the Tucker Act of 1887 created concurrent jurisdiction in the Court of Claims and the district courts in suits in contract against the United States for claims of $10,000 or less, while the Court of Claims had exclusive jurisdiction of all contract claims in excess of that amount. 244 F.2d at 678. In *Aleutco*, the claim exceeded $10,000, requiring the court to examine whether the action was one in tort or contract. *Id.* The court explained that the plaintiff's claim for conversion of property could have been brought in either the Court of Claims based upon breach of the purchase agreement, or in district court, for conversion. *Id.* at 679. At the time *Aleutco* was decided, there was no jurisdictional bar under the Tucker Act, and the court explained that the jurisdiction of the Court of Claims, and by

extension the District Court, could be sustained where elements of both contract and tort were involved. *Id.* at 679.

However, the CDA eliminated a plaintiff's ability to choose the forum in a case like *Aleutco* where a claim has elements of both contract and tort. Instead, the Court must examine whether the claim "relates to" the terms or performance of a government contract. *Evers*, 536 F.3d at 658. If it does, the CDA provides the exclusive mechanism for dispute resolution. *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995).

The holding in *Martin v. United States*, 649 F.3d 701 (9th Cir. 1981), cited for support by Plaintiff, is also inapposite. The plaintiff's injuries in *Martin* arose out of negligent repairs authorized by the Veterans Administration upon putting the plaintiff's house on the market for sale. There, the plaintiff suffered personal injuries when she slipped and fell when she encountered a dangerous condition in the bathtub. The plaintiff alleged tortious breach of a contractual duty to repair the premises, seeking damages in excess of $10,000 for personal injury. There, the court had no trouble finding that the FTCA governed despite the United States' argument that the Tucker Act applied. 649 F.2d at 704. The court did not discuss the CDA, instead examining both *Woodbury* and *Aleutco* and applying a similar analysis to the facts before it. The court arrived at the conclusion that the plaintiff's claim arose from an unsafe condition leading to a personal injury – "a classic tort," and it would be improper to limit the plaintiff to a purely contractual remedy. 649 F.2d at 705.

In contrast to *Martin* and *Aleutco*, Plaintiff here seeks damages for purely economic harm arising out of the breach of a lease agreement for the rental of equipment. Plaintiff's notice of tort claim indicates it is making "a claim to recover losses, per the terms of the Rental Agreement between [Sunbelt] and [United States Bureau of Reclamation]." (Dkt. 19-3 at 3.) The source of Plaintiff's rights arises from the contract, and the type of relief sought is to compensate for economic loss. *See B & B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 768 (6th Cir 2005) ("The classification of a particular action as one which is or is not [essentially contractual] depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate)."). Under such circumstances, the Court finds the CDA provides the exclusive mechanism for resolution of Plaintiff's claim. The Plaintiff's attempt to rely solely upon its assertion of a negligence claim to invoke jurisdiction is unavailing.

The proper disposition here is dismissal, as opposed to transfer of the case to the Court of Claims. On the record before the Court, Plaintiff could not have brought this action before the Court of Federal Claims because there is no showing that Plaintiff first submitted a claim as required by Section 7103 of the CDA. *Romano v. United States Army Core of Engineers*, No. 3:17-cv-930-JD, 2017 WL 6448221 *2 (N.D. Cal. Dec. 18, 2017); 41 U.S.C. § 7103. *But see Mendenhall v. Kusicko*, 857 F.2d 1378, 1379 (9th Cir. 1988) (ordering the action transferred to the Court of Claims and, without analysis, contravening the District of Idaho's order dismissing the action for lack of subject matter jurisdiction pursuant to the CDA). The United States' submissions show that Plaintiff did

not submit a claim to the contracting officer for the Bureau of Reclamation. Accordingly, the Court will enter an order dismissing this matter for lack of subject matter jurisdiction.

## CONCLUSION

Plaintiff's claim is dismissed without prejudice. Plaintiff's claim is one that relates to the procurement of a lease agreement and is therefore governed by the Contract Disputes Act.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Dismiss (Dkt. 19) is **GRANTED**.

2) The hearing set for October 31, 2018, is **VACATED**, and the Court will issue a separate judgment dismissing the complaint without prejudice.

DATED: October 30, 2018

Honorable Candy W. Dale
United States Magistrate Judge